IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2022 JUL -1 PM 4:44

JEFFREY P. COLWELL
CLERK

BY_____ DEP. CLK

Civil Action No. _____
(To be supplied by the court)

MONA CONWAY_____, Plaintiff

v.

GAIA'S REMEDY ASSISTED LIVING, LLC, and

AMANDA SISCO,

_____,

_____, Defendant(s).

**Jury Trial requested:**
(please check one)
_X_ Yes ___ No

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**A.    PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

MONA CONWAY  6450 COUNTY HIGHWAY 73, EVERGREEN, CO 80439

(Name and complete mailing address)

720-655-0087, MONACONWAY@ICLOUD.COM
(Telephone number and e-mail address)

**B.    DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   GAIA'S REMEDY ASSISTED LIVING, LLC, 6450 COUNTY HIGHWAY 73, EVERGREEN, CO 80439
(Name and complete mailing address)

303-674-6139, CONNECT@COASSISTEDLIVING.COM
(Telephone number and e-mail address if known)

Defendant 2:   AMANDA SISCO, 6450 COUNTY HIGHWAY 73, EVERGREEN, CO 80439
(Name and complete mailing address)

706-506-9467, MSISCO1126@GMAIL.COM
(Telephone number and e-mail address if known)

**C.    JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check all that apply)*

____   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (employment discrimination on the basis of race, color, religion, sex, or national origin)

__X__   Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, et seq. (employment discrimination on the basis of a disability)

__X__   Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, et seq. (employment discrimination on the basis of age)

____ Other: (*please specify*) _____

## D.    STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action and the specific facts that support each claim. If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: _____ (See Annexed "D. Statement of Claims" _____

The conduct complained of in this claim involves the following: (*check all that apply*)

____ failure to hire              __X__ different terms and conditions of employment

__X__ failure to promote          __X__ failure to accommodate disability

__X__ termination of employment   __X__ retaliation

____ other: (*please specify*) _____

Defendant's conduct was discriminatory because it was based on the following: (*check all that apply*)

____ race          ____ religion          ____ national origin          __X__ age

____ color         ____ sex               __X__ disability

Supporting facts: In May of 2022, Defendant was fully informed of Plaintiff's disabilities prior to executing an employment agreement and taking the position of live-in House Manager and Caregiver at Defendant's assisted living facility. In June of 2022, Defendant scheduled Plaintiff to work double the number of hours to fill a scheduling need, in total disregard for Plaintiff's health and well-being. Defendant coerced Plaintiff to work while Plaintiff was still (PCR) testing for Covid-19 and had obvious Covid symptoms, in order to fill a scheduling need, placing Plaintiff and the elderly and disabled residents of the facility in serious danger. Defendant threatened to deduct rent from pay if I did not perform work due to Covid.

D.   STATEMENT OF CLAIMS

1. This is an action against Defendants to redress the intentional deprivation of rights secured to Plaintiff under the laws of the United States and the state of Colorado.

2. Plaintiff has exhausted administrative remedies and complied with statutory prerequisites to maintain the claims asserted herein.

3. This is an action for damages in excess of fifteen thousand dollars ($15,000.00), exclusive of interest and costs.

4. The alleged unlawful acts of Defendants giving rise to this action were committed in Jefferson County, Colorado, within the jurisdiction of Jefferson County, Colorado.

5. Plaintiff is a citizen of Colorado and the United States.

6. Defendant, Gaia's Remedy is a corporation doing business in the State of Colorado.

7. Defendant, Sisco is an individual resident in the State of Colorado.

8. Plaintiff is a member of a class protected against discrimination on the basis of her age and disability.

9. At all times material hereto Plaintiff was an employee of Defendant(s) as defined under federal law.

10. As her employer, Defendants were prohibited from discriminating against Plaintiff on the basis of age and disability with respect to the compensation, terms, conditions, or privileges of her employment.

11. Plaintiff was hired by Defendant on or about May 13, 2022 as a caregiver in a 12-bed assisted living facility for the elderly and disabled and groomed to be the facility's live-in House Manager.

12. Job responsibilities of Plaintiff as caretaker involved caring for the elderly and disabled, cooking and cleaning the facility. Such tasks included: transferring wheelchair-bound residents from bed to chair and chair to toilet, using a mechanical lift or manual positioning; wiping residents after toileting; washing soiled clothing and sheets; changing resident diapers; washing residents' hands, faces, teeth, etc.; preparing meals and specialty snacks; washing and drying dishes and cookware and putting them away; dispensing medication to residents; keeping residents comfortable with respect to nourishment, temperature, physical positioning, companionship, medication, cleanliness or other needs; doing laundry, sweeping and mopping floors; cleaning surfaces; scrubbing bathrooms; walking or sitting with residents outdoors; taking vitals of the residents; recording all medications dispensed, vitals information, other health and care information and other daily notations; cleaning Defendants' refrigerator; keeping all areas

tidy; collecting garbage; and all other activities attendant to caring for the residents of the facility, wearing a uniform and personal protective equipment.

13. Job responsibilities of Plaintiff as a live-in House Manager involved all of the above, as needed, and, critically, being available to assist residents between the hours of 7:30 pm to 7:30 am, as an "on-call" employee. In exchange for this commitment, which was 7 days per week, Defendant provided a 7' x 8' room to Plaintiff.

14. For the first week of Plaintiff's employment (May 13 – 19, 2022) and before being offered an employment contract as House Manager, Plaintiff worked for Defendant at Defendant's assisted living facility for approximately 20 hours as a trainee at an hourly rate of $17.00.

15. Plaintiff engaged in several conversations with Defendant Sisco regarding Plaintiff's specific physical limitations, as a result of physical disabilities caused by a serious car accident and arthritis due to aging.

16. Defendant agreed that Plaintiff would work a maximum of 25 hours per week due to these disabilities unless Plaintiff expressed a desire and ability to perform more hours of work.

17. On May 20, 2022, Plaintiff and Defendants executed an employment contract for the live-in House Manager position, which was to begin on the move-in date of May 31, 2022.

18. As part of the live-in House Manager agreement, Plaintiff was promised: (1) a small, private bedroom on the second floor of the facility; (2) use of the main, fully equipped kitchen on the main floor of the facility; (3) use of a bathroom on the second floor of the facility, shared only with one female, live-in caretaker; (4) use of a common area, containing a kitchenette and living room area on the second floor of the facility; (5) use of a washer and dryer and unused hall area on the second floor of the facility; and (6) adequate Internet access.

19. In addition to the duties described herein, Plaintiff was also required to complete testing for 3 certifications within a month to be paid by Plaintiff and reimbursed by Defendant: CPR, QMAP, and Food Handlers. Internet access would be required.

20. While negotiating the terms of the employment agreement on May 20, 2022, Plaintiff requested that Defendant be paid a $500 refundable deposit for the room, as indicated in the employment contract, in installments over 2-3 months. Defendant readily agreed. Plaintiff later discovered that Defendant had deducted the entire amount from Plaintiff's first paycheck without permission. Plaintiff billed Defendant for 56 hours of work for the pay period of May 13 – May 31, 2022, but Defendant only paid Plaintiff for 21.6 hours to justify a $500 deduction.

21. From May 20, 2022 to May 25, 2022, Defendant scheduled Plaintiff to work in excess of

2

29 hours, due to scheduling issues. Plaintiff performed the work to the satisfaction of Defendant and the scheduled move-in date of May 31, 2022 was not changed.

22. The following workweek (May 26 – June 2), Defendant scheduled Plaintiff to work for less than 20 hours.

23. On May 31, 2022, as Plaintiff was cleaning the designated space (second floor bedroom and common areas) and moving her belongings, Defendant Sisco came to Plaintiff's room, requesting that Plaintiff cover the evening shift for another caretaker. Plaintiff protested the last-minute demand to work after a long day of packing, traveling and moving, and being tired and in pain, but agreed to help Defendant under the circumstances. Plaintiff told Defendant Sisco that boundaries were important to keep the working relationship.

24. On May 31, 2022, Plaintiff moved her belongings into the space provided by Defendant, but was told shortly thereafter that Plaintiff was not allowed to keep any personal items outside of the small bedroom. "Move your stuff into your room or your car," was what Plaintiff was told on June 1, 2022 by an agent of Defendant. Plaintiff does not possess a car. Use of the kitchenette was now limited to use of a small countertop and no cooking equipment was allowed.

25. Shortly after moving in, a camera was installed outside of Plaintiff's bedroom to record events taking place in the second floor common area. Additional cameras were installed in the main kitchen area as well that week. Plaintiff was not informed prior to such installation that her private activities would be monitored constantly.

26. From June 1 – June 15, 2022, Plaintiff billed Defendant for 52.5 hours of work, but was only paid for 49.08 hours because Defendant felt that the additional recorded work was not necessary.

27. On June 3, 2022, Defendant held a meeting with Plaintiff to discuss loyalty to Defendant company. Defendant stated that Plaintiff was doing her job "very well" and that Plaintiff's attitude was "great."

28. Plaintiff began to suffer from headaches, body aches, fever, mucus discharge and a painful cough on or about June 4, 2022 and same was reported to Defendant, Sisco.

29. From June 5 – June 8, 2022, Plaintiff was quarantined, isolated and unable to work because a resident on the second floor tested positive with Covid-19 and Plaintiff was showing symptoms of Covid-19. During Plaintiff's quarantine, no use of the facility was allowed, no food was provided to Plaintiff and no health measures (such as taking of temperature) were taken.

30. As part of Plaintiff's job requirements, Plaintiff was instructed by Defendant to take a "rapid test" and a PCR test for Covid-19. More than 6 tests were taken by Plaintiff, but the results of these tests were never provided by Defendant.

3

31. From June 11 – June 13, 2022, Plaintiff was scheduled to work 50 hours straight, covering for another employee, who was sick, and performing overnight care to residents. During this time, Plaintiff experienced serious Covid-19 symptoms (fever, headache, fatigue, mucus, coughing).

32. On June 14, 2022 Plaintiff initiated another discussion with Defendant Sisco about the scheduling, which was having a serious impact on Plaintiff's health and well-being. Defendant demanded that Plaintiff work an additional one hour per day, seven days per week, to do administrative tasks in the mornings and evenings in exchange for food. Plaintiff asked, once again, that Defendant avoid scheduling Plaintiff for more than 5 hours per day, not including overnight duties. Plaintiff told Defendant that she simply could not physically handle an additional 7 hours per week and Plaintiff was already paying for her own food.

33. On June 16, 2022, Plaintiff received a telephone call from the Colorado Department of Health and Environment, stating that Plaintiff had tested positive for Covid-19 on June 11, 2022 and June 14, 2022. Plaintiff was instructed to isolate for 5 days from the last positive test date and not come in contact with vulnerable residents until June 20, 2022 and then, only if symptom-free.

34. On June 16, 2022, Plaintiff contacted Defendant Sisco by text message, detailing the foregoing conversation with the CO Department of Health. Defendant disagreed with the Health Department's guidelines, stating: "Please only communicate with me about Covid. This means you had it when you were sick, but it's been 10 days since your onset of symptoms so you are ok to be out of quarantine."

35. Defendant Sisco threatened that if Plaintiff failed to work as scheduled on June 19, 2022, during the quarantine period prescribed by the Department of Health: "we are going to charge you rent for these days."

36. On June 16, 2022, Defendant, Sisco's agent (purported to be Sisco's baby's father) approached Plaintiff on the stairs, while Plaintiff was descending to make a meal in the main floor kitchen. Sisco's agent, named Orench Lagman, began to harass Plaintiff. Lagman asked Plaintiff if a stain on the rug that he was pointing to, was made by Plaintiff's dog. Plaintiff instantly replied, "No. That's not my dog's pee." Sisco's agent then repeated the question and insisted that it was. Plaintiff responded: "That stain is a splash – not a pee stain – and it's been here for weeks." Lagman stated: "Yeah, since you got here."

37. Several minutes later, Lagman continued harassing Plaintiff more aggressively while Plaintiff was preparing food in the main kitchen. Sisco's agent walked into the kitchen and stood over the stove, stating that the food smelled good and asked what was cooking (although it was obvious). Lagman lingered around the kitchen for a few more moments before asking Plaintiff whether the aluminum foil Plaintiff was using as a grease cup belonged to the company or to Plaintiff. He asked again and again, pointing to the box of

4

aluminum foil: "Is this yours?" "Is this our foil?" Lagman's demeanor was visibly hostile and aggressive, making Plaintiff feel demoralized and threatened and making another caregiver nearby very uncomfortable.

38. After June 16, 2022, Sisco inexplicably discontinued almost all communications with Plaintiff and took Plaintiff off the work schedule indefinitely.

39. On June 29, 2022, at 8:45 p.m., Defendant Sisco demanded to speak to Plaintiff immediately and announced to Plaintiff that she was being terminated from her job, effective immediately.

40. The reason given to Plaintiff for her firing was that 2 or more residents complained that Plaintiff was "mean" to them. When Plaintiff asked several times how such "meanness" was expressed toward the residents, Defendant failed to respond. An employee of Defendant, who was present at this impromptu meeting on behalf of Defendant stated, "I think it's your personality coming out." Defendant Sisco did not say anything.

41. Plaintiff was told that she would be denied access to the downstairs part of the house, including the kitchen. Plaintiff was told that she was not permitted to have any contact with the residents or the staff of the facility. Plaintiff was told that she would be given <u>14 days</u> to leave the premises permanently because Defendant Sisco was being "nice." Defendant Sisco stated that any deviation from her instructions would result in a call to police.

42. Plaintiff was told by Defendant Sisco to sign a printed memorandum of the meeting immediately. When Plaintiff stated that she would review and sign it in her own time, Defendant Sisco insisted, stating that she would call law enforcement and evict Plaintiff immediately if Plaintiff failed to sign the paper. Plaintiff was told by Defendant Sisco that any violation of any of the just-made rules would trigger a justification to contact the police and have Plaintiff immediately evicted. Plaintiff, under clear duress, signed the paper and walked away.

43. On July 1, 2022, Plaintiff sent a text message to Defendant Sisco, demanding the return of the $500 room deposit that was taken from Plaintiff's pay without authorization. Plaintiff explained the importance of having funds to move out of the facility as soon as possible and asked Defendant not to fight about it.

44. Defendant refused to pay Plaintiff the $500; refused to pay for work performed during the last and final pay period; reduced the amount of time to vacate the premises from 2 weeks to 3 days (from July 1, 2022); threatened to call the police; and threatened to take all of Plaintiff's belongings "to the dump." "I've done it before," Sisco stated in a July 1, 2022 text message. When informed by Plaintiff that Plaintiff might exercise the option to stay at the facility until a proper eviction notice was provided, Defendant stated: I will call the police and have you escorted off the property if you do not cooperate. I've done it before, <u>I have a proper contract for them to do it again</u>."

45. In addition to the aforementioned events, Defendants routinely required that Plaintiff falsify medical records. Defendant retaliated against Plaintiff for questioning Defendants' illegal practices in recording critical medication information.

46. Plaintiff was never given the job of House Manager, as indicated in the employment contract. No reason was ever given for this lack of promotion, which was expected based on past performance.

47. In addition to the aforementioned events, Defendants consistently punished Plaintiff for questioning the safety protocols for Covid-19-related events and/or refusing to participate in unsafe practices related to the spread of infection to a vulnerable population. Such punishment or retaliation took the form of: (1) refusing to tender money owed to Plaintiff from work performed on behalf of Defendant(s); (2) increasing or reducing hours in direct contradiction to the agreements made between the parties; (3) harassing or having other agents harass Plaintiff in her personal living space; (4) not informing Plaintiff of her own health status and being tested positive for Covid-19 so that Plaintiff might care for herself and not infect others; (5) evicting Plaintiff from her home at Defendants' business facility without proper notice; and (6) terminating Plaintiff's employment without cause and without notice.

COUNT I: DISPARATE TREATMENT

48. During her employment, Plaintiff possessed the skills and background necessary to perform the duties of her positions. As such, Plaintiff was qualified for the positions.

49. During Plaintiff's employment, Defendant, through its employee and/or agent, treated Plaintiff differently and less favorably from similarly situated employees outside the protected class. The disparate treatment of Plaintiff included, but was not limited to, the following: reducing Plaintiff's wages without cause; reducing the hours Plaintiff worked without cause; not promoting Plaintiff to the House Manager position as agreed on May 20, 2022, without adequate reason or explanation; disregarding Plaintiff's clearly elucidated disabilities and limitations and over-scheduling Plaintiff to work to fill a scheduling need of the facility; illegally evicting Plaintiff from her home in retaliation for Plaintiff's inability to perform work that Defendant demanding to fill fluctuating scheduling needs; terminating Plaintiff's employment in retaliation for Plaintiff's inability to perform work that Defendant demanding to fill fluctuating scheduling needs; and threatening (on 3 separate occasions within 24 hours) to call the police and have Plaintiff removed from the premises for Plaintiff's failure "to cooperate," meaning, "stop asking me for your money."

50. The discriminatory actions of Defendants against Plaintiff, when considered individually or collectively, constitute an adverse employment action for purposes of federal law. More specifically, the actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status as employees. As such, the disparate treatment

6

constitutes an adverse employment action within the meaning of the federally protected rights of Plaintiff.

51. The adverse employment actions were taken because of Plaintiff's age and/or disabilities. More specifically, Plaintiff's age and/or disability played a motivating factor in the adverse employment actions.

52. In subjecting Plaintiff to adverse employment action on the basis of age and/or disabilities, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

53. As a proximate result of the aforementioned intentional discriminatory acts of Defendant, through its employees and/or agents, Plaintiff has been forced to flee her residence due to ongoing harassment by Defendants, including threatening to call the police and destroy her belongings.

54. As a proximate result of the aforementioned intentional discriminatory acts of Defendant, through its employees and/or agents, Plaintiff has suffered damages, including, but not limited to, the following: lost wages, income, and employment benefits; emotional pain, suffering, mental anguish, loss of enjoyment of life, and dignitary injury; and costs, including attorney's fees, in pursuing redress for the deprivation of Plaintiff's civil rights.

55. If Plaintiff prevails on her Disparate Treatment claim, resulting in vindication of her civil rights, then Plaintiff is entitled to reasonable attorney's fees.

COUNT II: RETALIATION

56. As an employee of Defendant, Plaintiff was protected against retaliatory adverse employment action for engaging in statutorily protected activity under federal employment rights law. More specifically, Plaintiff was protected against retaliatory adverse employment action for opposing an unlawful employment practice of Defendant. Further, Plaintiff was protected against retaliation in employment decisions for opposing age and/or disability discrimination in the workplace.

57. Plaintiff engaged in protected activity by questioning and/or refusing to participate in discriminatory conduct and by contacting the EEOC and filing a charge of discrimination with the U.S. Department of Labor (OSHA) on June 30, 2022.

58. Defendant routinely "spies" on Plaintiff with video cameras located all over the Defendants' facility.

59. In opposing the discriminatory behavior of Defendants, Plaintiff had a good faith, reasonable belief that she had been or was being subjected to unlawful discrimination on the basis of age and/or disability. As such, Plaintiff engaged in statutorily protected activity just prior to Defendants' retaliatory actions, as described herein.

60. In response to Plaintiff's statutorily protected activity, Defendant, through its employees and/or agents, adopted a pattern of subjecting Plaintiff to a series of retaliatory adverse employment actions, including, but not limited to, the following: subjecting Plaintiff to unpaid suspension without compensation under Colorado law; subjecting Plaintiff to numerous, trivial disciplinary actions without adequate cause; drastically reducing the living space Plaintiff was promised before taking the position at Defendants' facility; having agents and employees badger Plaintiff with harassing questions about Plaintiff's personal activities; having or allowing an agent of Defendant to approach Plaintiff during her private time with hostile and aggressive badgering and unfounded accusations for the sole purpose of causing harm; threatening to continue to subject Plaintiff to disciplinary action without cause; evicting Plaintiff from her home of 4 weeks unlawfully, without notice and without cause; evicting Plaintiff again from her home unlawfully, giving 3 days notice to vacate for the sole reason of being uncooperative with Defendant Sisco's inclination to not pay money owed to Plaintiff; and threatening Plaintiff – on 3 distinct occasions within 24 hours - that Defendant would make false police reports against Plaintiff simply for not obeying Defendant's new rules about access to the facility and asking for Plaintiff's earned pay.

61. These reprisals were a materially adverse employment action in that such actions, whether considered individually or collectively, constituted an ultimate employment decision, altered the terms, conditions or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status as an employee. Further, the retaliatory acts were reasonably likely to deter employees from engaging in protected activity. As such, the retaliatory acts constitute adverse employment actions for the purposes of Plaintiff's federally protected rights.

62. The retaliatory harassing acts when considered collectively were sufficiently severe and/or pervasive to materially alter the conditions of Plaintiff's employment and create a hostile working environment. In working a materially adverse change in the terms and conditions of Plaintiff's employment, the retaliatory harassment constitutes an adverse employment action.

63. Defendant, through its employees and/or agents, was aware of Plaintiff statutorily projected activity when it subjected her to adverse employment action. More specifically, Plaintiff was subjected to adverse employment action after she engaged in statutorily protected activity.

64. The adverse employment action was taken because of Plaintiff statutorily protected activity. More specifically, Plaintiff's protected activity was a motivating factor in the adverse employment actions.

65. In taking adverse employment action against Plaintiff because of his statutorily protected activity, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

66. By and through acts alleged, Defendants intentionally discriminated against Plaintiff for engaging in statutorily protected activity.

67. As a proximate result of the aforementioned intentional discriminatory acts of Defendant, through its employees and/or agents, Plaintiff has suffered damages as alleged more specifically herein.

COUNT III: DISCRIMINATION

68. Plaintiff repeats and realleges the allegations contained herein.

69. Plaintiff was discriminated against by Defendant on the basis of age and disability.

70. Defendant was fully aware of Plaintiff's age (57) and disabilities (described above) at the time of hiring, during a two-week training period and after Plaintiff moved into Defendants' assisted living facility. Despite this clear understanding, Defendant, Sisco, insisted upon singling-out Plaintiff to perform work, receive constant criticism regarding trivial matters, harassing Plaintiff through Defendants' agents; wrongfully firing Plaintiff; wrongfully evicting Plaintiff; and refusing to pay Plaintiff for services rendered to Defendant.

WHEREFORE, Plaintiff prays this Honorable Court grant relief to Plaintiff in the form of: an order declaring that Defendants violated Plaintiff's rights under federal and Colorado state law; an order for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses: an order for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; an order for reasonable attorney's fees (including expert fees) and costs; punitive damages; an order enjoining Defendant from engaging in any such unlawful employment practice, and for any other affirmative action or equitable relief as the Court deems appropriate; and for other and further relief as the Court deems just and proper.

E. **ADMINISTRATIVE PROCEDURES**

Did you file a charge of discrimination against defendant(s) with the Equal Employment Opportunity Commission or any other federal or state agency? (*check one*)

    \_\_\_ Yes (***You must attach a copy of the administrative charge to this complaint***)

    _X_ No

Have you received a notice of right to sue? (*check one*)

    \_\_\_ Yes (***You must attach a copy of the notice of right to sue to this complaint***)

    _X_ No

F. **REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

G. **PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

4

_____
(Plaintiff's signature)

June 30, 2022
_____
(Date)

(Revised February 2022)